IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STATE OF NEW JERSEY and its )
Division of Investment, et al., )
)
               Plaintiff, )
)
v. ) Case No. 03-2071-JWL
)
SPRINT CORPORATION, et al., )
)
               Defendants. )

## ORDER

This complex securities case comes before the undersigned U.S. Magistrate Judge, James P. O'Hara, on two related motions, both regarding a Fed. R. Civ. P. 30(b)(6) deposition of defendant Sprint Corporation. Sprint has filed a motion for a protective order precluding the deposition (**doc. 380**). Plaintiff, State of New Jersey and its Division of Investment, has filed a combined opposition to Sprint's motion and its own motion to compel the 30(b)(6) deposition (**doc. 382**).

Plaintiff served notice of its intention to take a 30(b)(6) deposition of Sprint on November 24, 2009, and again on January 7, 2010.[1] Both before and after these notices were served, the parties extensively discussed the propriety and scope of such a deposition, specifically whether such a deposition would be limited to document authentication (despite the more broadly stated topic descriptions in the deposition notice), and who the corporate

---

[1] Exs. 7 & 10 to doc. 381.

designee would be if the deposition went forward (an employee of Sprint or one of its lawyers). These communications have been extensively detailed in the parties' briefs and documented in literally hundreds of pages of attachments, and thus will not be repeated here. Suffice it to say that no consensus has been reached.

Of course, whether to enter a protective order is a matter within the court's discretion.[2] Fed. R. Civ. P. 26(c) allows the court, upon a showing of good cause, to enter an order protecting a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." But the rule does not permit the court to issue such an order to protect a party from having to provide discovery on topics merely because it's argued those topics are overly broad or irrelevant, or because it's argued the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence.[3] That is, irrelevancy and overbreadth are objections more appropriately addressed in the context of a motion to compel.[4] Further, protective orders that would preclude depositions altogether are rarely

---

[2] *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007).

[3] *Belisle v. BNSF Ry. Co.*, No. 08-2087, 2009 WL 1559759, at *1 (D. Kan. June 1, 2009) (quoting *P.S. v. Farm, Inc.*, No. 07-2210, 2009 WL 483236, at *3 (D. Kan. Feb. 24, 2009)); *see also Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) ("Rule 26(c) does not provide for any type of order to protect a party from having to divulge privileged information or materials that are not calculated to lead to the discovery of admissible evidence.").

[4] *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135, 2007 WL 1652056, at *4 (D. Kan. June 6, 2007). *But see Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).

granted.[5]

Sprint's motion for a protective order raises several arguments in favor of prohibiting the requested 30(b)(6) deposition. But none of those arguments meet the required showing described above. Sprint has not credibly demonstrated a potential for "annoyance, embarrassment, oppression, or undue burden or expense." Further, even if considered in the context of plaintiff's motion to compel, the arguments advanced by Sprint do not persuade the court that a 30(b)(6) deposition would be improper.

Sprint's first argument is that plaintiff has already used the allotted 22 depositions and therefore should not be allowed a 23rd deposition to question Sprint under Rule 30(b)(6).[6] However, viewing the record as a whole, the court concludes this is insufficient reason to preclude the deposition altogether. In a complex case such as this, where considerable amounts are at stake, 23 depositions hardly seems excessive. Moreover, apparently Sprint previously has been willing to consider a 30(b)(6) deposition as long as it was done on Sprint's terms, notwithstanding the 22 deposition limit.[7] And finally, the court notes

---

[5] *Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000) ("Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition.").

[6] The August 11, 2009 Amended Second Phase Scheduling Order allowed plaintiff to take up to 22 depositions over defendants' duly noted objections. Doc. 276 at 3–4.

[7] Doc. 381 at 3 ("[W]hile the parties might disagree regarding Plaintiff's entitlement to a Rule 30(b)(6) deposition, Sprint remained willing to meet and confer regarding the scope of such a deposition and *the conditions under which Sprint would be willing to give such a deposition* notwithstanding its objections." (Emphasis added.)).

plaintiff's argument in its reply that an unexpected additional deposition involving a former Arthur Andersen employee is the real reason that the total number of depositions it seeks now stands at 23 instead of the previously planned 22. The court finds plaintiff has shown good cause for taking one more deposition, and thus the court declines to use that previously set limit as a hyper-technical basis to preclude Sprint from being deposed pursuant to Rule 30(b)(6).

Sprint's second argument is that the proposed topics for the 30(b)(6) deposition are overly broad, vague, and ambiguous, and have not been described with "reasonable particularity" as required by that rule. Respectfully, the court disagrees. Generally asserting that a deposition topic is overly broad does not justify a protective order absent a specific, particularized showing as to how providing testimony on a certain topic would be unduly burdensome, unduly expensive, embarrassing, oppressive, or annoying.[8] The court finds that Sprint has not made the required showing. Further, the court has reviewed the topics in the notice and concludes they are not so overly broad as to fall outside the "reasonable particularity" standard. To the contrary, the court believes that the topics described in the 30(b)(6) notice have been reasonably limited (i.e., to the extent possible) to the specific subject matters, actions, individuals, and time periods relevant to this case.[9]

Sprint's third argument is that the information plaintiff purportedly seeks could be

---

[8] *Cohen-Esrey Real Estate Servs. v. Twin City Fire Ins. Co.*, No 08-2527, 2009 WL 4571845, at *1 (D. Kan. Dec. 3, 2009).

[9] *See* ex. 7 to doc. 381 at 8–11.

obtained by more efficient means. But Sprint's argument on this point necessarily assumes that all plaintiff is seeking is information related to document authentication.[10] Sprint basically ignores that plaintiff seeks testimony from a corporate representative beyond issues related to document authentication. Although Sprint maintains that plaintiff earlier represented that it only sought a 30(b)(6) deposition to establish document authenticity, the notice served clearly indicates otherwise.[11] Contrary to Sprint's arguments, and with a view to the procedural history of discovery in this case, a 30(b)(6) deposition is likely the most effective way to question Sprint on the topics at issue.

Sprint's fourth argument is that a 30(b)(6) deposition of Sprint would be duplicative of discovery already obtained by plaintiff through requests for admission and depositions of Sprint's former directors and employees. It is Sprint's position that any corporate designee would prepare for a 30(b)(6) deposition by reviewing depositions of former directors and employees, making the testimony given in a 30(b)(6) deposition identical—or at least very similar—to previous depositions.

But as plaintiff notes, this argument overlooks the basic purpose of a 30(b)(6) deposition. Rule 30(b)(6) allows an organization to designate an individual to "testify on its behalf." The testimony provided by a corporate representative at a 30(b)(6) deposition

---

[10]*See* Doc. 381 at 15 ("To the extent the purpose of a Rule 30(b)(6) deposition would be to obtain Sprint's agreement to authenticity and admissibility, a stipulation would be far more efficient.").

[11]*See, e.g.*, ex. 2 to doc. 382.

binds the corporation. This is quite unlike a deposition of an employee of that corporation, which is little more than that individual employee's view of the case and is not binding on the corporation.[12] Even if the substance of the information ultimately provided mirrors that of the testimony given by Sprint's former directors and employees, plaintiff still is entitled to tie down the definitive positions of Sprint itself, rather than that of the individuals who work for Sprint.[13] Further, plaintiff should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to written requests for admissions already served. Such a result would essentially limit a plaintiff to the first form of discovery served, since topics are bound to overlap.

Accordingly, the court finds Sprint has failed to show good cause for a protective order and has likewise failed to demonstrate that plaintiff's motion to compel should not be granted.[14] Having concluded that the deposition should go forward, the next issue is whether Sprint should be permitted to designate Michael A. Paskin or Ronald S. Rolfe, Sprint's retained counsel from New York, as the 30(b)(6) corporate representative. This issue first

---

[12]*In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-1840, 2009 WL 5064441, at *2 (D. Kan. Dec. 16, 2009) ("[W]hen a person testifies in his individual capacity under Rule 30(b)(1), he speaks on behalf of himself, not his company.").

[13]*See id.* ("[C]ourts have consistently held that the fact that a company's employee was deposed under Rule 30(b)(1) does not insulate the company from producing the same—or another—individual as a corporate representative to give a Rule 30(b)(6) deposition.").

[14]*See* Fed. R. Civ. P. 26(c)(2) ("If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.").

arose when the parties were attempting to resolve this matter without court intervention. Sprint maintains that, if any such deposition goes forward, it would be least burdensome and most efficient for outside counsel to serve as the corporate designee, claiming that it is "not uncommon" for attorneys to serve as 30(b)(6) witnesses. While in the court's experience this often is true of in-house counsel, the court is much less convinced of the commonality of outside trial counsel serving as 30(b)(6) deposition witnesses.

Certainly, Sprint is under no obligation to designate outside counsel as its 30(b)(6) witness. Nor can Sprint credibly argue that outside counsel are the *only* individuals who could adequately serve as the 30(b)(6) witness. When designating a corporate representative, a party simply has a duty to designate and educate an individual so that he or she can fully and completely answer questions on the designated subject matter. "[P]ersonal knowledge of the designated subject matter by the selected deponent is of no consequence."[15] Thus, it seems to the court that almost any person—attorney or not—could fulfill the requirements of Rule 30(b)(6). At least given the dearth of legal authority cited by the parties, the court believes Sprint is free to designate whomever it feels can "fully, completely, [and] unevasively" answer questions regarding the subject matters listed by plaintiff.[16]

---

[15]*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527–28 (D. Kan. 2006).

[16]*Id.* at 528 (quoting *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000)).

For reasons explained more fully below, the court strongly suspects Sprint is just bluffing about designating Mr. Paskin or Mr. Rolfe as the 30(b)(6) witness. But in the unlikely event Sprint actually chooses to go this route, it's with the understanding that Sprint won't be permitted to effectively frustrate or impede the deposition under the banner of privilege. As even Sprint has acknowledged, it is not suggesting "that privilege issues would prevent a lawyer from answering any deposition question as a Sprint designee that a non-lawyer would be allowed to answer."[17] Thus, as long as Sprint's designee—be it attorney or not—can fulfill the requirements of Rule 30(b)(6), Sprint may proceed as it sees fit.

As earlier indicated, plaintiff has failed to cite sufficient authority that would justify an outright prohibition on Sprint designating outside counsel as the corporate representative. So too has Sprint failed to adequately demonstrate that using outside trial counsel as a corporate designee is ethically permissible or a risk-free proposition.

Mr. Paskin and Mr. Rolfe are excellent lawyers. Their law firm is recognized as truly outstanding. Good lawyers don't come cheap. Given the scorched-earth manner in which this case has been litigated by both sides, the court infers that Sprint has paid legal fees and expenses expressed in at least seven digits to get Mr. Paskin and Mr. Rolfe and others in their firm up to speed on the complexities and nuances of this case. Plaintiff essentially has committed to file a motion to disqualify if Mr. Paskin or Mr. Rolfe is designated as Sprint's 30(b)(6) designee. Sprint responds that any such motion to disqualify would be frivolous,

---

[17]Doc. 384 at 6.

which at least in the undersigned's experience is something more easily said than proven to the satisfaction of a court. Frankly, the court cannot fathom that a sophisticated, fully informed client like Sprint would entertain even a 10% risk of losing access to its lead trial counsel in this case (or *any* case) over a mere dispute about whom to place in the 30(b)(6) chair. Therefore, lest there be any suggestion of inequity later on this point, Sprint is strongly cautioned to think very long and hard about designating outside trial counsel as the 30(b)(6) witness, as that will definitely expose the attorney—indeed, perhaps his entire law firm—to disqualification later.[18]

Despite the foregoing comments, for three reasons the undersigned respectfully declines what might be construed as the parties' implicit invitation to definitively decide this thorny issue of disqualification now. First and foremost, Sprint hasn't actually designated Mr. Paskin or Mr. Rolfe as the 30(b)(6) designee. Second, neither side has filed a motion squarely presenting this issue, and their briefs in connection with the two pending motions only sparsely address the issue. And third, even if the court's suspicion about a bluff is flat wrong and Sprint actually proceeds as it has indicated, custom and practice suggests that plaintiff's inevitable motion to disqualify would be decided by the judge presiding at trial, in this case U.S. District Judge John W. Lungstrum.

---

[18]*See, e.g.*, *Cartier, A Div. of Richemont North America, Inc. v. Bertone Group, Inc.*, 404 F. Supp. 2d 573, 574 (S.D.N.Y. 2005) ("[T]he Court concludes that, in this case, [litigation counsel] may serve as the 30(b)(6) witness on the aforementioned topics so long as he and his clients understand that he thereby incurs some material risk that he will subsequently be disqualified from serving as plaintiffs' trial counsel.").

Accordingly, Sprint's motion for a protective order (doc. 380) is denied. Because none of Sprint's arguments justify preventing the 30(b)(6) deposition, plaintiff's motion to compel (doc. 382) is granted, and plaintiff may proceed to depose a Sprint representative on the topics listed in the notice. Sprint shall designate its corporate witness or witnesses keeping in mind the considerations noted above. Although the statements made by Sprint in its reply memorandum regarding the timing of the deposition are duly noted, as indicated in the prior order of this court (doc. 383), the 30(b)(6) deposition of Sprint shall be completed by **February 26, 2010**. Despite all the procedural jockeying of the past several weeks, the fact remains Sprint already has had 87 days (i.e., since November 24, 2009) to identify and prepare its 30(b)(6) designee(s).

IT IS SO ORDERED.

Dated February 19, 2010, at Kansas City, Kansas.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge
